IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENTES WEST, # K-82893, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16-cv-984-NJR |
| | ) |
| RAKERS, | ) |
| C/O SLAVENS, | ) |
| C/O HARRIS, | ) |
| and MISTY, | ) |
| | ) |
| Defendants. | ) |

# **MEMORANDUM AND ORDER**

**ROSENSTENGEL, District Judge:**

This matter is before the Court for case management. On August 29, 2016, following the Memorandum and Order entered in *West v. Butler, et al.*, Case No. 16-cv-414-SMY-RJD (Doc. 1 in the instant case), this matter was severed from the original case pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 to bring claims arising from his confinement at the Menard Correctional Center ("Menard"). His complaint (Doc. 2) named 29 individuals as Defendants and included 19 distinct claims that the Court severed into eight different cases. This case includes the three claims designated by the Court as follows:

> **Count 8:** Eighth Amendment claim against Defendants Rakers and Slavens for threatening Plaintiff on July 29, 2015, after another inmate blamed Plaintiff for throwing feces;
>
> **Count 9:** Eighth Amendment claim against Defendants Rakers and Harris, for failing to feed Plaintiff a meal on July 30, 2015;
>
> **Count 12:** Eighth Amendment excessive force claim against Defendant Rakers for slamming Plaintiff's hand in the food slot on August 4,

>   2015; and deliberate indifference claims against Defendants Rakers and Misty for refusing Plaintiff medical attention for his resulting injuries.

The claims are linked by the fact that Defendant Rakers is named in each one; thus it is appropriate for them to be considered in the same action. As Plaintiff was advised in the order severing his claims, the threshold merits review pursuant to 28 U.S.C. § 1915A is now due to be conducted.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578

F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

### **Factual Allegations in the Complaint (Doc. 2)**

In July 2015, Plaintiff had been attacked in the yard by two other inmates. He suspected that another prisoner (White) may have been behind the attack. (Doc. 2, p. 28-29). After this, White told Defendant Rakers that Plaintiff had started the fight out of racial motivation, which was false. (Doc. 2, p. 29). As a result, Defendant Rakers "began to come for" Plaintiff. *Id*.

On July 29, 2015, inmate White threw feces in front of Plaintiff's cell and the neighboring cell. Soon after, Defendant Rakers came onto the gallery. Inmate White stopped Defendant Rakers before he arrived at Plaintiff's cell and told him that Plaintiff had thrown out the feces. Plaintiff and another inmate denied White's story and told the officer to check the security cameras. Defendant Rakers then "sent Defendant Slavens to [Plaintiff's] cell," where Slavens proceeded to "threaten" Plaintiff, even though Plaintiff and his neighbor explained that it would have been impossible for the feces to have landed where they did if Plaintiff had thrown them. (Doc. 2, pp. 29-30).

On July 30, 2015, Defendant Rakers decided not to feed Plaintiff and tried to give him an empty food tray. Plaintiff could see the tray being blown by the unit's fan, so he told Defendant Rakers he knew the tray had been tampered with. (Doc. 2, p. 30). Defendant Rakers did not give

the tray to Plaintiff. Later, at Plaintiff's request, another officer looked at the tray and found that it was empty. Plaintiff reported the empty tray to Defendant Harris, who told Plaintiff to talk to his gallery officer, but failed to summon another officer for Plaintiff or get him another tray. After Plaintiff waited for a time and decided that he was not going to receive a tray of food, he responded by flooding his cell to get the attention of officers. (Doc. 2, p. 31). This led to an encounter with other guards that is the subject of a different severed claim.

The last incident involving Defendant Rakers occurred on August 4, 2015. Plaintiff had been told that he was being transferred to another prison on a court writ. Inmate White told Defendant Rakers that Plaintiff was about to be transferred. According to Plaintiff, Defendant Rakers, believing that Plaintiff was going to "get away" before he could beat him, intentionally slammed Plaintiff's hand in the metal food slot to his cell. (Doc. 2, p. 32). This caused Plaintiff's hand to bleed, and he later lost two fingernails. *Id*. After this incident, Plaintiff asked Defendant Rakers to get him medical attention, but Rakers refused.

Plaintiff showed his injuries to Defendant Nurse Misty, who asked him what happened. When Plaintiff explained that a prison official hurt him, she refused to help him, saying she could not assist him if he was blaming staff. *Id*. The next day (August 5), a medical technician (Stephanie, who is not a named Defendant) told Plaintiff to clean the dried blood, but Plaintiff could not do so because his water had been turned off. She then told him to get it addressed after he was transferred to Stateville Correctional Center. Plaintiff did get medical attention after his arrival at Stateville, which included several doses of pain medication. *Id*.

### Merits Review Pursuant to 28 U.S.C. § 1915A

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff's claims in Count 12 against Defendant Rakers for excessive force and against Defendants Rakers and Misty for

deliberate indifference to medical needs, survive threshold review under § 1915A. Counts 8 and 9 fail to state a claim upon which relief may be granted, however, and those claims will be dismissed.

### Count 8–Threats

Verbal threats and harassment, without more, do not generally rise to the level of a constitutional violation. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"); *see also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment.").

In this case, Plaintiff describes having been wrongly accused of an action that could have resulted in disciplinary charges being filed against him. In the wake of the feces-throwing incident, Defendant Rakers sent Defendant Slavens to Plaintiff's cell, and Defendant Slavens proceeded to "threaten" Plaintiff. But Plaintiff does not describe what Defendant Slavens said or did that constituted a "threat." Without any facts regarding Defendant Slavens's behavior, the complaint fails to state a claim for any violation of Plaintiff's constitutional rights. Moreover, Plaintiff does not claim that he was subjected to disciplinary charges or faced any other consequences as a result of the incident.

Accordingly, **Count 8** against Defendants Rakers and Slavens based on the "threats" against Plaintiff shall be dismissed without prejudice.

### Count 9–Denial of a Meal

In a case involving conditions of confinement in a prison, two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause. First, an

objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective element–establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

In some circumstances, a prisoner's claim that he was denied food may satisfy the objective element of a constitutional claim. The denial of food is not, however, a *per se* violation of the Eighth Amendment. Rather, a district court "must assess the amount and duration of the deprivation." *Reed v. McBride*, 178 F.3d 849, 853 (7th Cir. 1999). *See generally Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (it would be an Eighth Amendment violation to deny a prisoner an "identifiable human need such as food"); *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001) (withholding food from an inmate can, in some circumstances, satisfy the first *Farmer* prong); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (noting that denial of one out of every nine meals is not a constitutional violation); *Cooper v. Sheriff of Lubbock Cnty.*, 929 F.2d 1078 (5th Cir. 1991) (failure to feed a prisoner for twelve days is unconstitutional); *Cunningham v. Jones*, 567 F.2d 653, 669 (6th Cir. 1977), *app. after remand*, 667 F.2d 565 (1982) (feeding inmates only once a day for 15 days, would constitute cruel and unusual punishment only if it "deprive[s] the prisoners concerned . . . of sufficient food to maintain normal health.").

In Plaintiff's case, Defendants Rakers and Harris deprived him of only one meal on July 30, 2015. This incident alone is not a sufficiently serious deprivation to satisfy the objective element of an Eighth Amendment claim. As such, Plaintiff fails to state a claim upon which relief may be granted as to Count 8 against Defendant Rakers or Defendant Harris. **Count 8** shall therefore be dismissed without prejudice.

**Count 12–Excessive Force and Deliberate Indifference to Medical Needs**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

In this case, Plaintiff states that Defendant Rakers intentionally and maliciously slammed his hand in the food slot without any justification. At this stage, Plaintiff has stated a claim against Defendant Rakers for excessive force that merits further review.

Plaintiff further asserts that Defendant Rakers refused to get him any medical attention for his injured hand after Rakers slammed it in the food slot. Although Defendant Rakers is not a medical provider, the Seventh Circuit has held that a guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Thus, Defendant Rakers may be found liable for deliberate indifference to Plaintiff's need for medical care, in addition to the excessive force claim. The deliberate indifference claim against Defendant Rakers may also proceed in Count 12.

Defendant Misty is alleged to be a nurse/medical technician, yet she refused to provide Plaintiff with any care for his injured hand after he reported that Defendant Rakers had hurt him. In order to state a claim for deliberate indifference to a serious medical need, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).

According to Plaintiff, his hand was bleeding, and he told Defendant Misty about the injury. The condition of his hand appears to have been objectively serious. Defendant Misty's refusal to treat him exacerbated the delay in addressing Plaintiff's medical needs–he did not get any treatment until after his transfer. These facts, at this stage, support a deliberate indifference claim against Defendant Misty as well.

**Count 12** shall proceed for further review as to the excessive force and deliberate indifference claims against Defendant Rakers and the deliberate indifference claim against Defendant Misty.

### Disposition

**COUNTS 8 and 9** are **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. Defendants **SLAVENS** and **HARRIS** are **DISMISSED** from this action.

The Clerk of Court shall prepare for Defendants **RAKERS** and **MISTY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 9, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**